Marsh *v.* Love.

WARREN MARSH, surviving executor,

*v.*

ANDREW LOVE.

A testator directed his executors to sell all his real estate not otherwise disposed of by the will, and to re-invest the proceeds in a specified manner, "such sale or sales to be made in one year after my decease, and sooner if deemed desirable by them."—*Held*, that the limitation as to time was merely directory, and the use of the words "and sooner" did not restrict the executor's

Marsh *v.* Love.

power to sell to one year after testator's death; and further, that if the sur-
viving executor was derelict therein, the beneficiaries under the power could
compel him to execute it.

Bill for specific performance. On final hearing on bill and
answer.

*Mr. C. Marsh*, for complainant.

*Mr. W. L. Hetfield*, for defendant.

THE CHANCELLOR.

This is a suit for specific performance of a written contract of
sale of land in Plainfield, made between the parties, by which
the complainant, surviving executor of Frazee Marsh, deceased,
agreed to sell to the defendant, and the latter agreed to purchase.
The defendant refuses to comply with his agreement, upon the
ground that the complainant cannot convey to him a good title
for the property, because although the will confers upon the ex-
ecutors power of sale, it limits its exercise, as he alleges, to the
period of one year after the testator's death, which took place in
1874. The sale was made in 1886. By the will, which is dated
May 22d, 1869, the testator directed that his debts and funeral
expenses be paid, and he then proceeded as follows :

"I hereby order and direct my executors, hereinafter mentioned, to invest,
upon good security, $4,000 ($2,000 of which being now invested in stock
of the First National Bank, Plainfield, New Jersey, the balance to be made
up from what money I may have on hand at my decease, or from the sale of
my property), the interest and income therefrom to be paid to my wife, Mary
C. Marsh, half yearly, so long as she shall remain my widow."

After giving specific legacies to his wife, and making specific
devises of real estate to two of his sons, and giving pecuniary
legacies to his other four sons, he proceeded as follows :

· "I hereby order and direct my executors, hereinafter named, and the sur-
vivor of them, to sell and dispose of all my real and personal estate not here-
inbefore disposed of, either at public auction or private contract, whichever
may be thought by them most advantageous to the interest of my estate, and

8

to make, execute and deliver good and sufficient deeds for said real estate to the purchaser or purchasers thereof; *such sale or sales to be made in one year after my decease, and sooner if deemed desirable by them,* and the net proceeds arising from such sale or sales, after paying the legacies above mentioned, and all expenses of settling my estate, and investing the said $4,000 for the use of my said wife, as mentioned in article second, herein contained, I give and bequeath to my six sons, Albert, Washington, Warren, Aaron, Alexander and Randolph, to be divided equally between them, share and share alike," &c.

The real estate in question was not specifically devised. When the will was made (in 1869) real estate in Plainfield was readily salable at high prices, but, at the date of the testator's death (in 1874) it had greatly depreciated in salable value, and then, and for several years thereafter, the executors found it impossible to make sale of the property in question, except at great sacrifice. Besides making continuous diligent effort to sell it at private sale for a fair price, they offered it for sale at public auction in 1880, and got but a single bid, and that was, in their judgment, far below the value of the property, and they therefore refused to sell it at that price. They, and the survivor of them, continued to endeavor to sell it at a fair price, but were unable to do so up to the time when the latter sold it (at public auction) to the defendant. The premises are the only remaining assets out of which to raise $2,000 of the fund to be invested for the widow.

The testator directs his executors, and the survivor of them, to convert absolutely his real estate not specifically devised, and gives the proceeds, after paying thereout the legacies and all expenses of settling his estate and after investing the $4,000, to his six sons in equal shares. After the death of his wife, he gives the $4,000 to them in like manner; $2,000 of the $4,000 must be raised out of the proceeds of the sale. The legacies are all charged upon the land. There is no evidence whatever of any intention to limit the exercise of the power of sale to the period of one year after the testator's decease. The rule of construction of such powers is that the limitation is directory merely, unless it appears from the will that the testator intended that it should be of the essence of the power.

Marsh *v.* Love.

Where it is merely directory, the power may be executed after the expiration of the limited period, but where the limitation is of the essence of the power, the power must be executed within the prescribed period. *Perry on Trusts* § *771; Pearce* v. *Gardner, 10 Hare 287; Cuff* v. *Hall, 1 Jur.* (*N. S.*) *972; Shalter's Appeal, 43 Pa. St. 83; Chasmar* v. *Bucken, 10 Stew. Eq. 415.*

It is urged by the defendant's counsel that the language of the power in this case shows an intention to limit the exercise of it to the period of one year from the time of the testator's death. This construction is based upon the words "and sooner" in the clause of limitation. The whole clause is, "such sale or sales to be made in one year after my decease, and sooner if deemed desirable by them." But the words "and sooner" were evidently used to prevent the executors from construing the limitation of one year, as it would have stood without those words, as postponing the sale for the year, or in other words, as prohibiting them from selling at any time within the year. The direction in *Pearce* v. *Gardner* was to sell with all convenient speed and within five years. In *Cuff* v. *Hall,* the trustees were authorized to postpone the sales, but not for a longer period than ten years. In *Shalter's Appeal,* the language was "so that it be done within one year after my decease." The use of the words "and sooner" does not warrant the construction for which the defendant's counsel contends. But further: the power is coupled with a trust in which others besides the surviving executor are interested, and therefore if he be derelict in the performance of his duty to sell, he may, in the interest of the other beneficiaries, be compelled by this court to sell. There will be a decree for the specific performance by the defendant of his contract.